UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BRENDA BROWN, on behalf of herself and )
others similarly situated, )
)
)
      Plaintiff, )
)
)
v. ) Case No. 5:10-cv-81
)
CITY OF BARRE, VERMONT, CAROL )
DAWES, in her official capacity as Town )
Clerk and Credit Supervisor, )
)
      Defendants. )

## OPINION AND ORDER GRANTING MOTION FOR CLASS ACTION CERTIFICATION AND GRANTING MOTION TO INTERVENE
(Docs. 41, 50, 62)

    This matter came before the court on September 9, 2010 for an evidentiary hearing on all pending motions. The parties completed post-hearing briefing on October 28, 2010.

    Plaintiff Brenda Brown brings this 42 U.S.C. § 1983 action on behalf of herself and others similarly situated against Defendants City of Barre, Vermont (the "City"), and Carol Dawes in her official capacity as the City's Town Clerk and Credit Supervisor. Ms. Brown alleges that the Defendants maintain an unlawful practice of disconnecting water service to tenants of rental units in the City whose landlords have defaulted on their water bill, without providing the tenants with appropriate recourse. Presently before the court are Ms. Brown's motion for class action certification, and intervenor Earl Brooks's motions to intervene permissively and as of right. The Defendants oppose class certification, Ms. Brown's proposed status as a class representative, and Mr. Brooks's intervention.

I.   **Findings of Fact.**

Based upon the evidence admitted at the court's hearing, and the sworn affidavits attached to the Parties' pleadings, the court makes the following findings of fact. At the time of filing her First Amended Complaint, Ms. Brown lived in a rental unit in the City of Barre, Vermont. Pursuant to a written lease with her landlord Jeffery Tevis, Ms. Brown's monthly rent of $650.00 included water, lights, and heat. A monthly Social Security disability payment of $726.00 was (and continues to be) Ms. Brown's sole source of income.

On January 19, 2010, the City notified Ms. Brown that her water service would be disconnected the next day because her "ratepayer" landlord had defaulted on the water bill. The notice was addressed to Mr. Tevis and his wife, and advised that a payment in the amount of $571.57 was required by the close of business on January 19th in order to avoid water shut-off. Payment was not made and the water was disconnected on January 20th. The City restored water to Ms. Brown's rental unit later that same day, but then again advised of its intention to disconnect the water unless payment was made.

In response to the notification, Ms. Brown contacted the City in an effort to ensure that the threatened water shut-off did not occur. She spoke to several City employees and was told that the amount due immediately to avoid shut-off was $571.57, and that the total amount necessary to bring the account current was $2,160.27. She was also informed that, because she was only a tenant and not the ratepayer on the account, she could neither appeal the City's decision to disconnect the water, nor establish a new water account in her own name. The City advised Ms. Brown that if she was unable to pay her landlords' delinquent water bill, her only options were to seek some form of financial help or to contact her landlord. When Ms. Brown attempted to contact Mr. Tevis, she found that his work phone had been disconnected, and messages she left on his home phone were not returned.

On February 3, 2010, the City again disconnected the water to Ms. Brown's rental unit. Once disconnected, the City required payment of the account's full outstanding

balance plus a reconnection fee in order for water to be restored. Ms. Brown could not afford this payment, and the water remained off for about two weeks until a Vermont state court issued a temporary restraining order, requiring the City to restore water service to Ms. Brown's rental unit. The state court subsequently ordered the City to continue to provide water service to Ms. Brown provided that she made monthly payments for her actual usage.

Ms. Brown endured a number of hardships during her two weeks without water. She underwent foot surgery on February 4, 2010, and in order to complete the post-operative regimen of washing the surgical area with soap and water, she had to either carry water in containers to the kitchen sink, or travel to the homes of friends and family to use their water. With a walking boot on her foot at all times, traveling and carrying water in large containers was "extremely difficult." Ms. Brown also bathed less frequently because it was difficult to heat water on the stove and then carry it to the bathtub. Cooking became "very difficult," and she was forced to use a laundry mat, spending almost $100.00 per visit to wash her family's clothing. For drinking water, Ms. Brown filled milk jugs with water. She tried storing extra water in her bathtub, but the water leaked out overnight. Of all these inconveniences, using the toilet "was the worst." Ms. Brown had to manually fill the toilet tank with water, and the tank would sometimes run out of water while flushing. This state of affairs caused her embarrassment, and she declined visitors because she could not spare water for them to use the toilet.

Following the state court order restoring water, Ms. Brown began making monthly payments to the City for her actual water usage. She continued these payments until September 1, 2010, at which point she moved out of her rental unit because the building in which it was located was in foreclosure. She is currently renting an apartment outside the City.

City records reveal that, over the last three years, 169 rental units in the City received notice of water disconnection because of a delinquent water account, and the City actually disconnected water at twenty-six of those units. The evidence does not

establish the number of individuals, if any, that actually occupied these units when the notice was sent or the water was turned off. Six properties at which the City disconnected water were occupied by their owners (as opposed to tenants like Ms. Brown), but all such properties contained at least one additional unit in which the owner did not live, and which would have been equally affected by a water shut-off.

Proposed Intervenor Earl Brooks resides at one of the City's 169 units to which notices of water disconnection have been sent. He pays $650.00 in monthly rent that includes water service. On May 12, 2010, he received a notice of a delinquent water account and a one-day notice of water shut-off scheduled for May 13, 2010. The notice stated that payment in the amount of $1,238.39 must be made in order to avoid water shut-off. The landlord/ratepayer of Mr. Brooks's water account subsequently entered into a payment plan with the City, and Mr. Brooks's water was not disconnected. Mr. Brooks's sole source of income is a monthly Social Security disability payment in the amount of $726.04, and he lacks the necessary funds to restore water service if, in the future, his landlord/ratepayer defaults on the payment plan.

## II.   Conclusions of Law and Analysis.

Ms. Brown and Mr. Brooks both allege violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution, as well as Vermont state law violations arising out of the City's allegedly unlawful practice of disconnecting water service to tenants whose landlord/ratepayer has defaulted on the water bill. Ms. Brown has moved for class action certification and proposes a class composed of "all tenants in the City of Barre, Vermont whose ratepayer landlords are in default or at risk of default on their water bills and who consume water services provided by the Defendant City under rental agreements which provide that their ratepayer landlords provide water service as part of the rental agreement." (Doc. 39 ¶ 9.)

On behalf of the proposed class, Ms. Brown seeks a declaration that the City's practice of disconnecting water service to the proposed class members violates state law and/or is unconstitutional, and that, when applied to disconnect the proposed class

4

members' water service, the Vermont Uniform Water and Sewer Disconnect statute, 24 V.S.A. §§ 5141-5151, and § 19-36 of the Barre City Ordinances Concerning Water and Sewer Services, are unconstitutional. Further, she seeks an injunction ordering the Defendants to restore water service to any City rental units occupied by proposed class members whose water service has been disconnected due to nonpayment by a landlord/ratepayer, and to refrain from terminating the water service to the proposed class members in the future.

The Defendants oppose class action certification, arguing that Fed. R. Civ. P. 23's requirements are not satisfied in this case, and that, in any case, Ms. Brown cannot serve as a named class representative because her claims for prospective injunctive relief became moot when she moved outside the City.

### A.   Class Action Certification.

Fed. R. Civ. P. 23 governs class action certification and requires a proposed class to satisfy all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). In addition, class certification must also be appropriate under one of three subdivisions in Rule 23(b). *Id.* at 476. Here, the class is proposed under Rule 23(b)(2), which provides that certification is warranted when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b).

"In evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." *Brown*, 609 F.3d at 476 (quoting *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). The plaintiff bears the burden of establishing each Rule 23 requirement by a preponderance of the evidence. *Id.* (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

### i. Numerosity.

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), and "[c]ourts should not be so rigid as to depend on mere numbers as a guideline on the practicability of joinder; a determination of practicability should depend on all circumstances surrounding a case." *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968); *see also General Tel. Co. of the Northwest, Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). Accordingly, a "court may make common sense assumptions to support a finding of numerosity." *German v. Federal Home Loan Mortg. Corp.*, 885 F. Supp. 537, 552 (S.D.N.Y. 1995) (internal quotation marks omitted).

Although plaintiffs may not establish numerosity based upon mere speculation regarding the potential class size, they are not required to provide "evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux*, 987 F.2d at 935. The Defendants challenge numerosity because there is no evidence demonstrating actual occupancy of the rental units to which the City has disconnected water. Without such evidence, the Defendants argue, there are no identified class members other than Ms. Brown and Mr. Brooks, and therefore the Plaintiffs have not established that joinder of all class members would be impracticable. A more flexible, common sense approach is warranted here.[1] Because City records reveal that the City disconnected water service to twenty-six apartment units, and sent disconnection notices to 143 additional units because of delinquent water bills over the last three years, it is likely that most if not all of these units were occupied by at least one or more persons

---

[1] It is unreasonable to expect Ms. Brown to verify the historic occupancy rates of the City's rental units before any formal discovery has taken place.

6

who were using City water.[2] Thus, even considering only those rental units to which the water service was disconnected, and excluding six of those as possibly owner-occupied, and four others as possibly vacant, the number of potential class members is likely to be at least twenty. *See Barlow v. Marion Cnty. Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D. Fla. 1980) ("[p]laintiffs must show some evidence of or reasonably estimate the number of class members," but need not prove the exact number).

Although a class of twenty does not presumptively satisfy the numerosity requirement, *see Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that class of only forty members is presumptively sufficient), classes with even fewer members may be certified under certain circumstances. *See, e.g., Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986) (finding numerosity satisfied even though plaintiffs could identify only sixteen class members); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (noting that "court may certify a class even if it is composed of as few as 14 members" in a class action seeking injunctive relief under Rule 23(b)(2)).

In addition to the number of potential class members, the numerosity analysis depends on whether class certification will advance judicial economy by avoiding a multiplicity of actions, whether the size of the individual claims render individual lawsuits unlikely, and whether requests for prospective injunctive relief will involve unknown future class members who add to the impracticability of joinder. *See Robidoux*, 987 F.2d at 936; *Bishop v. New York City Dep't of Housing Pres. and Dev.*, 141 F.R.D. 229, 235 (S.D.N.Y. 1992). Here, the court finds that these factors weigh heavily in favor of finding numerosity.

---

[2] The parties agree that the prior three years is the relevant time period because of Vermont's three-year statute of limitations for personal injury claims. *See* Docs. 43 at 3; 45 at 3; *see also Morse v. Univ. of Vermont*, 973 F.2d 122, 126 (2d Cir. 1992) ("We have ruled that discrimination actions brought pursuant to 42 U.S.C. §§ 1981 and 1983 are most analogous to personal injury actions under state law; hence, the corresponding state statute of limitations has been deemed controlling.").

First, the nature of the relief that the plaintiffs seek is particularly well suited for class certification as "the Second Circuit has relaxed the numerosity requirement where the proposed class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2)." *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (citing *Robidoux*, 987 F.2d at 935-36). In addition, class actions like the proposed one that "challeng[e] statutes . . . on constitutional grounds, have been recognized as natural class actions, and inclusion in the class of potentially aggrieved individuals has often been regarded as sufficient to meet the Rule 23(a)(1) impracticability requirement." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) (internal quotation marks omitted); see also *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975) (giving liberal construction to numerosity requirement in civil rights suit seeking injunctive relief on behalf of future class members).

Second, the relatively small size of each individual claim supports certifying the proposed class as "[i]t is often observed that Rule 23 provides small claimants who would otherwise be unable to bring individual lawsuits a vehicle by which a small, common claim . . . can be heard." *Koss v. Wackenhut Corp.*, 2009 WL 928087, at *4 (S.D.N.Y. Mar. 30, 2009). Indeed, "[o]ne of the basic reasons for promulgating [R]ule 23 was to provide small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation." *Familienstiftung v. Askin*, 178 F.R.D. 405, 411 (S.D.N.Y. 1998) (quoting *Stoudt v. E.F. Hutton & Co., Inc.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988)). Here, the proposed class includes any tenant whose landlord/ratepayer is past due on a City water bill by more than $15.00. *See* 24 V.S.A. § 5143(b)(1) (stating that disconnection of water service is not permitted if the aggregate delinquent bills and charges do not exceed $15.00). A list of delinquent accounts compiled from City records shows that since 2004, delinquent ratepayers have owed the City an average past due amount of $226.64. *See* Pl's. ex. 1. With such small amounts at stake, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits," and so "aggrieved persons may be without any

effective redress unless they may employ the class-action device." *Deposit Guar. Nat'l Bank, Jackson, Mississippi v. Roper*, 445 U.S. 326, 339 (1980); *see also Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 240 (W.D. Pa. 2008) (finding that individual claims worth approximately $330.00 made "it unlikely that individual plaintiffs would prosecute claims on their own," and therefore favored finding numerosity).

Finally, if the proposed class is successful on its claims, the resulting benefits will inure to those future City tenants whose landlords default on their water bills, and who would otherwise have their water disconnected. Because unknowable future occupants of City rental units may be properly included in the numerosity analysis, the joinder of all class members in this case is not only impracticable, it is impossible. *See Smith v. Heckler*, 595 F. Supp. 1173, 1186 (E.D. Cal. 1984) (including in numerosity analysis those who may, in the future, be denied disability status under certain challenged social security regulations); *Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983) (including in numerosity analysis individuals who may in the future be subjected to the challenged policies of the Immigration and Naturalization Service); *see also Putzer v. Whorton*, 2008 WL 4167509, at *8 (D. Nev. Sept. 3, 2008) ("A class which includes unnamed and unknown future members supports the numerosity requirement regardless of the class size, as joinder of said members is impracticable.").

In summary, "the fluid composition of the [rental] housing population is particularly well-suited for status as a class because while the identity of the individuals may change, the nature of the harm and the basic parameters of the group affected remain constant." *Bruce*, 113 F.R.D. at 557. Based upon the totality of the circumstances, the court finds that the proposed class action satisfies the numerosity requirement of Rule 23(a).

### ii. Commonality and Typicality.

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate the analysis of Rules 23(a)(2) and (3)." *Marisol A. v.*

*Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The focus of "both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interest of class members will be fairly and adequately protected in their absence.'" *Id.* (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (other internal citations omitted)).

The commonality requirement is met if "plaintiffs' grievances share a common question of law or of fact." *Marisol A.*, 126 F.3d at 376. In slight contrast, typicality "requires that the claims of the class representatives be typical of those of the class," *id.*, and "is satisfied where the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Nicholson*, 205 F.R.D. at 98. When a plaintiff seeks injunctive and declaratory relief, there is a presumption that both commonality and typicality are present. *Id.* at 98-99 (citation omitted); *see also Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 165 (2d Cir. 2001) ("Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives").

In this case, not only do the Plaintiffs' requests for injunctive and declaratory relief give rise to a presumption of commonality and typicality, there are also common legal questions regarding the constitutionality of a state statute and the City's interpretation of it as applied to rental tenants whose landlords have defaulted on the water bill. This more than satisfies Rule 23(a)(2), which does not require that "*all* questions of law and fact among the proposed class . . . be identical." *McCoy v. Ithaca Hous. Auth.*, 559 F. Supp. 1351, 1355 (N.D.N.Y. 1983); *see also Port Auth. Police Benevolent Ass'n v. Port Auth. of New York and New Jersey*, 698 F.2d 150, 154 (2d Cir. 1983) (explaining that although question of whether employees engaged in protected speech "will doubtless vary with respect to the [employees] who have spoken out, the common factual issue remains as to whether [their employer] is suppressing protected expression"); 1 William B. Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg*

10

*on Class Actions* § 3:12 (4th ed. 2010) ("The Rule 23(a)(2) prerequisite requires only a single issue common to the class.").[3]

### iii. Adequacy.

Rule 23(a)(4) further requires "representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite involves two separate inquiries. First, a plaintiff must demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Second, a plaintiff must show that the proposed class members and the named representatives do not have interests antagonistic to one another. *Id.* Here, the adequacy of class counsel is unquestioned, and the only issue is whether the interests of Ms. Brown (and Mr. Brooks as a potential intervenor) are sufficiently aligned with those of the proposed class.

Both named plaintiffs are adequate representatives because there is no conflict between their interests and those of the proposed class members. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975) ("[W]here it is unlikely that segments of the class . . . would have interests conflicting with [the proposed class representative] has sought to advance . . . the test of Rule 23(a) is met."). The Defendants' only argument to the contrary is an unsupported assertion that some class members may prefer to bring individual suits against their respective landlords, rather than pursuing class claims against the City. Assuming *arguendo* this is true, it does not create a conflict of interest as even a class member intent on filing a separate lawsuit against his or her landlord would benefit from an order barring the City from disconnecting water service. In any event, a speculative disagreement about litigation strategy alone "does not cast doubt on the solidarity among

---

[3] It matters not that a plaintiff seeks only injunctive and declaratory relief on behalf of the class while other potential class members may seek damages. Under the "elastic" typicality standard, "named plaintiffs can represent class members who suffer different injuries so long as all of the injuries are shown to result from the same practice." *Nicholson*, 205 F.R.D. at 98; *see also* 1 Newberg, *supra*, § 3:12 ("a court has the discretion to limit a class suit to liability issues only, or to selected common claims and defenses, or the court may certify the class initially and then . . . decertify the class after an adjudication of liability").

11

class members to have current [City practices] declared unlawful." *Williams v. Lane*, 96 F.R.D. 383, 386 (N.D. Ill. 1982). The court thus finds that the requirement of adequacy has been satisfied.

### iv.  Rule 23(b)(2).

The final inquiry for certification is whether the Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). When considering Rule 23(b)(2) certification of a class involving claims for both injunctive relief and non-incidental monetary damages, "a district court must 'consider[] the evidence presented at a class certification hearing and the arguments of counsel,' and then assess whether" the monetary relief predominates over the claims for equitable relief. *Robinson*, 267 F.3d at 164 (quoting *Hoffman v. Honda of Am. Mfg., Inc.*, 191 F.R.D. 530, 536 (S.D. Ohio 1999)). Rule 23(b)(2) certification is appropriate if, "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.*

This case falls squarely within Rule 23(b)(2). The objective of this litigation is to ensure that the City does not disconnect water service to non-ratepaying tenants who owe no debt to the City and have no obligation, outside of their rent, to pay for water. As Ms. Brown recounted during the class certification hearing, the loss of running water results in substantial hardships. It almost goes without saying that reasonable individuals will seek the restoration of water, or the cessation of the City's practice of disconnecting water, even without the possibility of monetary damages. In addition, if the City's alleged practice is ultimately adjudged to be unlawful, the most appropriate remedy may be an injunction preventing further use of that practice.

The Defendants object to Rule 23(b)(2) certification, but they do not suggest that, assuming the proposed class prevails on the merits, injunctive relief would be

inappropriate, or that claims for damages predominate over claims for equitable relief. Instead, they merely reiterate their numerosity objections, arguing that an insufficient number of City residents have been affected by the alleged policy to support a claim that the Defendants have "acted or refused to act on grounds that apply generally to the class." Having found numerosity, the court concludes that this argument is without merit in a Rule 23(b)(2) analysis. As the Advisory Committee's note to subsection (b)(2) explains, "[a]ction or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966).

### v. Class Definition.

Application of Rule 23 to this case reveals that "[t]his is a paradigmatic Rule 23(b)(2) class action. Plaintiffs seek class-wide structural relief that would clearly redound to the benefit of each class member." *Bruce*, 113 F.R.D. at 559 (citation omitted). For the foregoing reasons, the class is hereby certified. The court defines the class as: all tenants in the City of Barre, Vermont from February 17, 2007 to the present whose leases include City water paid for by the landlord/ratepayer and who have had or are at risk of having their water service disconnected by the City because their landlord/ratepayer's water bill was or is in default. *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999) ("District Judges have broad discretion over class definition"). The court presently certifies this class only as to liability and injunctive and declaratory relief. Any claims for monetary damages or other relief may be adjudicated on an individual basis following a determination of liability. *See* Fed. R. Civ. P. 23(c)(4) ("When appropriate, a class may be brought or maintained as a class action with respect to particular issues."); *Dodge v. Cnty. of Orange*, 226 F.R.D. 177, 184 (S.D.N.Y. 2005) (certifying class only as to issue of liability).

### B. Mootness.

As she concedes, Ms. Brown's claims for prospective injunctive relief became moot when she moved out of the City because she is no longer subject to the City's water disconnection policies. *See Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) ("[a] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome"). For this reason, the Defendants argue that Ms. Brown cannot serve as class representative and that the entire action is moot. *See Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994) ("if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot."). In the Second Circuit, there are two ways in which dismissal may be avoided after the named plaintiff's claims have become moot. First, an intervenor may replace the original named plaintiff. *Comer*, 37 F.3d at 799 (citing *Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-31 (1976)). Second, under certain circumstances, class certification may "relate back" to the filing of the complaint, and the original named plaintiff may continue to represent the class provided her claims were extant when the complaint was filed. *Id.* (citing *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)). Both possibilities are present here, but, as demonstrated below, the court need only address the question of intervention.

### i. Mr. Brooks.

Mr. Brooks seeks to intervene under Fed. R. Civ. P. 24 and represent the proposed class in its request for injunctive and declaratory relief. Assuming that Ms. Brown's claims for injunctive relief do not "relate back" to when she filed her Complaint, the court must establish that Mr. Brooks personally has standing to bring a claim for injunctive relief before he can replace her as class representative. *See Carver v. City of New York*, 621 F.3d 221, 228 n.6 (2d Cir. 2010) ("A 'class action allegation adds nothing to the standing inquiry since the named plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'")

(quoting *Doe v. Blum*, 729 F.2d 186, 190 n.4 (2d Cir. 1984)); *see also Does I Through III v. District of Columbia*, 216 F.R.D. 5, 9 (D.D.C. 2003) ("standing and entitlement to equitable relief are threshold jurisdictional requirements that must be satisfied prior to the certification of a class") (internal quotation marks omitted).[4]

In the absence of an ongoing deprivation or harm, a plaintiff has standing to seek prospective injunctive relief if he "show[s] a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of the Univ. System of Georgia*, 247 F.3d 1262, 1283 (11th Cir. 2001); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998). It is not enough that the plaintiff was harmed by the challenged conduct in the past; the plaintiff must instead show that he or she "is realistically threatened by a repetition of the [previous harm]." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see also White v. First Am. Registry*, 230 F.R.D. 365, 367 (S.D.N.Y. 2005) ("[W]here, as here, a plaintiff challenges an allegedly wrongful policy, he or she must allege credibly a 'realistic threat from the policy.'") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000)).

The controlling Supreme Court precedent on this issue is *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). There, the plaintiff sought declaratory and injunctive relief against the City of Los Angeles because he claimed that he had been illegally choked by Los Angeles police officers following a minor traffic violation. *Id.* at 97-98. Although he alleged that the Los Angeles police routinely applied choke holds and that he faced a threat of being illegally choked again in the future, the Supreme Court concluded that the plaintiff's allegations of future injury were too speculative and dismissed the case for lack of standing. The Supreme Court held that in order to allege standing the plaintiff would

---

[4] Although the Defendants have not objected to Mr. Brooks's intervention on standing grounds, the "[c]ourt has an obligation *sua sponte* to assure itself that the plaintiffs have Article III standing before delving into the merits." *Connecticut v. American Elec. Power Co., Inc.*, 582 F.3d 309, 332 (2d Cir. 2009).

need to establish "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, . . . or, (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 106. Without such a showing, the Court observed that "[the plaintiff] is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain [law enforcement] practices are unconstitutional." *Id.* at 111.

In contrast to the speculative threat of future injury in *Lyons*, Mr. Brooks has shown that he remains realistically threatened by the City's water disconnection policies. First, unlike the plaintiff in *Lyons*, Mr. Brooks alleges harm caused by an official policy that remains in force. Courts generally agree that "when the threatened acts that will cause injury are authorized or part of a policy, it is significantly more likely that the injury will occur again," and the existence of an official policy therefore supports the plaintiff's standing to pursue injunctive relief. *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003); *see also Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (explaining that "the existence of an official policy" makes repeated harm more probable); *Deshawn E.*, 156 F.3d at 344-45 (distinguishing *Lyons* and finding standing because "the challenged interrogation methods in this case are officially endorsed policies").

Second, Mr. Brooks has also shown a sufficient likelihood that he will be harmed by the City's policy again. *See Shain*, 356 F.3d at 216 ("a plaintiff seeking injunctive relief must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent"). Mr. Brooks will once again fall within the City's water disconnection policy if his landlord/ratepayer fails to make timely payments under the agreed upon payment plan. Given that his landlord/ratepayer was in default on the water bill by over $1,000.00 as recently as May 12, 2010, and presumably remains in debt while he pays the City according to an individualized payment plan, Mr. Brooks faces a "realistic threat" that he will again be threatened with a water disconnection because of

his landlord/ratepayer's delinquent payments. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974) (recognizing that "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury."). Finally, as a tenant who was recently threatened with water disconnection, and whose landlord/ratepayer has negotiated a payment plan with the City to cure a delinquent water account, Mr. Brooks is sufficiently distinguished from the general population of rental tenants in the City. *Cf. Shain*, 356 F.3d at 215 (holding that plaintiff lacked standing for injunctive relief because, although he suffered the harm before, he "was no more likely to be subject to [the harm again] than any other citizen of Nassau County").

Having determined that Mr. Brooks has standing to seek injunctive relief, the court turns to whether he can intervene under Rule 24. Regardless of whether he may intervene as of right, Rule 24(b)(1)(B) allows for permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Although intervention is not appropriate if the Rule 24 motion is untimely, or if intervention will unduly delay or prejudice the adjudication of the rights of the original parties, *see United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994), the Defendants have not raised those concerns here. Finding that Mr. Brooks has a claim that shares common questions of law with the claims of the proposed class, the court hereby GRANTS Mr. Brooks's motion for permissive intervention as a named plaintiff.

        ii.    **Ms. Brown.**

Because Mr. Brooks has standing to seek injunctive relief and has properly intervened, the class claims are not moot and there is no need to consider whether class certification can "relate back" to when Ms. Brown had live claims for injunctive relief. *Comer*, 37 F.3d at 799. Further, Ms. Brown can remain as a named plaintiff because, even though her claims for prospective relief are moot, she continues to seek compensatory damages based on the same theories of liability (Doc. 39 at 13 ¶ 5). *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 801 n.5 (2d Cir. 2009) (explaining that,

because a class representative "also sought compensatory damages, the [mooting of her claims for injunctive relief], by itself, did not render [her] interest in the class action lawsuit moot"). The court therefore DENIES the Defendants' request to deny her class representative status.

### III. Conclusion.

For the reasons set forth above, Ms. Brown's motion to certify the class (Doc. 41) is GRANTED, Mr. Brooks's motion to intervene permissively (Doc. 62) is GRANTED, and Mr. Brooks's motion to intervene as of right (Doc. 50) is DENIED as moot.
SO ORDERED.

Dated at Burlington, in the District of Vermont, this 13th day of December, 2010.

Christina Reiss
United States District Court Judge